David B. Rosenbaum, 009819
Anne M. Chapman, 025965
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
achapman@omlaw.com
drosenbaum@omlaw.com

Eugene F. Assaf, DC Bar 449778 (*Pro Hac Vice*)
K. Winn Allen, DC Bar 1000590 (*Pro Hac Vice*)
Kirkland & Ellis, LLP
655 Fifteenth St. N.W.
Washington, D.C. 20005
(202) 879-5078
eugene.assaf@kirkland.com
winn.allen@kirkland.com

Douglas H. Meal, MA Bar 340971 (*Pro Hac Vice*)
Ropes & Gray, LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
(617) 951-7517
douglas.meal@ropesgray.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Federal Trade Commission,<br><br>    Plaintiff,<br><br>vs.<br><br>Wyndham Worldwide Corporation, et. al.,<br><br>    Defendants. | Case No. CV 12-1365-PHX-PGR<br><br>**MOTION TO DISMISS BY DEFENDANTS WYNDHAM WORLDWIDE CORP., WYNDHAM HOTEL GROUP, LLC, & WYNDHAM HOTEL MANAGEMENT, INC.**<br><br>**ORAL ARGUMENT REQUESTED** |

**INTRODUCTION**

Concurrently with this motion, defendant Wyndham Hotels and Resorts, LLC ("WHR") has filed a motion to dismiss the FTC's Amended Complaint for failure to state a claim under Rule 12(b)(6). As that motion explains, the FTC's novel legal theories in this case have no basis in law or logic: Section 5's prohibition on "unfair" trade practices does not give the FTC authority to regulate the data-security practices of private companies, particularly as those practices pertain to payment card data. And the FTC's deception allegations completely ignore explicit disclosures that foreclose the possibility that any reasonable consumer could have been "deceived" by WHR's statements concerning its data-security practices. For those reasons alone, the Amended Complaint should be dismissed.

Wyndham Worldwide Corp. ("WWC"), Wyndham Hotel Group, LLC ("WHG"), and Wyndham Hotel Management, Inc. ("WHM")—corporate affiliates of WHR—file this separate motion to address certain elements of the FTC's allegations that pertain only to them. The Amended Complaint does not allege that WWC, WHG, or WHM *themselves* engaged in any activity prohibited by Section 5. Instead, the FTC seeks to hold those separate corporate entities derivatively liable for the allegedly unlawful conduct that was undertaken by WHR alone. Although generally disfavored, that kind of derivative liability is justified in this case, the FTC maintains, because WWC, WHG, WHM, and WHR all operated as a "common enterprise" in disregard of their legally separate corporate identities.

The FTC's "common enterprise" allegations fail as a matter of law, and thus WWC, WHG, and WHM must be dismissed from this case, regardless of how this Court resolves WHR's motion to dismiss. In FTC enforcement actions such as this, distinctions in corporate identities must be adhered to absent "highly unusual circumstances." *P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261, 266 (6th Cir. 1970). The FTC's allegations fall well short of that demanding standard. Courts typically impose "common enterprise" liability only in cases where a defendant is trying to use

the corporate form as a tool to escape Section 5 liability.  But the FTC does not (and could not) allege that WHR is trying to use its corporate status to avoid liability here—dismissal of WWC, WHG, and WHM would have no effect on whatever Section 5 liability the FTC might conceivably be able to establish against WHR (although WHR believes no such violations can be established).  In addition, the Amended Complaint does not adequately allege the great majority of facts that are typically necessary to establish "common enterprise" liability.  For example, although the FTC had the benefit of a two-year investigation prior to commencing this lawsuit, the Amended Complaint does not allege that defendants' fail to observe corporate formalities, fail to adhere to corporate distinctions when dealing with third parties, or fail to maintain separate books and records.  And although the Amended Complaint does allege that defendants have common ownership and a common corporate headquarters, those facts alone have ***never*** been held sufficient to result in "common enterprise" treatment.  Indeed, virtually all corporate affiliates in today's business world share common ownership and office space, and finding a "common enterprise" on those facts alone would subject all private companies—large and small—to derivative liability for the acts of any entity in the corporate family.

In short, this case is far afield from those instances in which courts have typically felt compelled to set aside corporate identities and declare a "common enterprise," and the FTC has not alleged any facts that would justify making any of the defendants here derivatively liable for the acts of an affiliate.  For these reasons, and those explained below, WWC, WHG, and WHM should be dismissed from this case.

**BACKGROUND**

Many of the basic facts relevant to this case are set forth in the motion to dismiss filed by WHR.  Rather than repeat those facts here, WWC, WHG, and WHM state only those facts that are directly relevant to this motion.

Defendant WWC is a diversified hospitality company that, through its ownership interest in various corporate subsidiaries, is active in a number of different hospitality

related areas. Am. Compl. ¶ 13. Defendant WHG is a wholly owned subsidiary of WWC and constitutes one of WWC's three main business units. *Id.* Through its own group of subsidiaries, WHG franchises a number of well-known hotel brands, such as Days Inn, Super 8, Ramada, Howard Johnson, Travelodge, and Wyndham Hotels.

WHR and WHM are subsidiaries of WHG that are responsible for providing certain services to independent hotels operating under the "Wyndham Hotels" brand, a full-service hotel chain with over 70 locations in the United States. *Id.* ¶ 9. Most of those independent hotels are licensed to use the "Wyndham Hotels" brand name pursuant to franchise agreements with WHR, through which WHR licenses the use of the "Wyndham Hotels" brand and agrees to provide certain services to the franchisee, who retains day-to-day responsibility for running the hotel. *Id.* Other independent owners operate under the "Wyndham Hotels" brand pursuant to management agreements with WHM, under which WHM agrees to manage the property as the agent of the independent owner. *Id.* ¶ 10.

On three separate occasions from 2008 to 2010, criminal computer hackers gained unauthorized access into WHR's computer network and into the separate computer networks of several Wyndham-branded hotels. *Id.* ¶ 25. Those attacks might have resulted in the criminal hackers gaining access to payment card data that had been collected by the Wyndham-branded hotels and stored on their local networks. Citing those criminal cyber attacks as evidence of some alleged wrongdoing, the FTC commenced this unprecedented action seeking to impose liability under Section 5 of the FTC Act for a private company's alleged failure to maintain reasonable and appropriate data security for consumers' personal information. *See id.* ¶ 1.

The FTC named WWC, WHG, WHM, and WHR as defendants in this case. The allegations in the Amended Complaint, however, assert that the criminal cyber attacks impacted only WHR's network and those networks maintained by the independent hotels. Nonetheless, the FTC maintains that WWC, WHG, and WHM should be held "jointly and severally" liable for WHR's alleged failure to maintain reasonable and

adequate data security, because all of the entities named in the Amended Complaint allegedly operate as a "common enterprise." *Id.* ¶ 11.

## ARGUMENT

### I. THE AMENDED COMPLAINT DOES NOT ALLEGE DIRECT LIABILITY AGAINST WWC, WHG, OR WHM

The Amended Complaint contains no allegations that WWC, WHG, or WHM *themselves* engaged in any "deceptive" or "unfair" conduct in violation of Section 5. To the contrary, the FTC's allegations of wrongdoing focus entirely on WHR. For example, the FTC's deception claim pertains exclusively to "[WHR's] website," Am. Compl. ¶ 20, and the only allegedly "deceptive" statements were all "disseminated on the [WHR] website," *id.* ¶ 21. Similarly, the FTC's Count II unfairness claim points only to certain alleged data-security failures by WHR or the independently owned Wyndham-branded hotels. *See id.* ¶ 24. Thus, in purporting to list a series of alleged data-security failures, the complaint points only to practices related to WHR's corporate network or to the separate networks maintained by the Wyndham-branded hotels. *See, e.g.*, *id.* ¶ 24(g) ("failed to adequately inventory computers connected to the [WHR] network"); *id.* ¶ 24(h) ("fail[ed] to monitor [WHR's] computer network for malware"); *id.* ¶ 24(j) ("failed to adequately restrict third-party vendors' access to [WHR's] network"). The FTC also concedes, as it must, that the three criminal cyber attacks alleged in the Amended Complaint resulted in criminal hackers gaining access to only the computer networks of WHR and certain Wyndham-branded hotels. *See id.* ¶¶ 2, 25. The hackers did not, in other words, breach any networks maintained by WWC, WHG, or WHM.

To be sure, the Complaint does at times allege that all of the "Defendants" made deceptive statements or engaged in unfair conduct. *See, e.g.*, *id.* ¶¶ 44-46 (alleging that "Defendants" made "representations" that were "false or misleading and constituted deceptive acts or practices"); *id.* ¶¶ 47-49 (alleging that "Defendants … failed to employ reasonable and appropriate measures to protect personal information" and thus engaged in "unfair acts or practices in violation of Section 5."). But those allegations

4

are empty contentions unsupported by any specific factual development showing how WWC, WHG, or WHM made any deceptive representations or engaged in any unfair conduct. Such "naked assertions" of liability, "devoid of further factual enhancement," are precisely the kind of conclusory allegations that fail bedrock federal-pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *accord FTC v. Kuykendall*, 371 F.3d 745, 758 (10th Cir. 2004) (reversing district court order finding affiliates liable for conduct of another corporation where the FTC "failed to provide … any reason to believe the other corporate defendants could control DMS, or that the corporate structure was nothing more than an effort to conceal the assets of DMS and not a legitimate liability-limiting arrangement").[1]

## II. WWC, WHG, & WHM CANNOT BE HELD DERIVATIVELY LIABLE FOR WHR'S ALLEGED VIOLATIONS OF SECTION 5

Unable to allege that WWC, WHG, and WHM themselves committed any direct violation of Section 5, the FTC maintains that those separate corporate entities should nonetheless be held "jointly and severally" liable for any Section 5 violation committed by WHR. Am. Compl. ¶ 11. That is so, the FTC claims, because all of the separate corporate defendants in this case "have operated as a common business enterprise," *id.*, and thus can all be treated as one for purposes of assigning liability. But the Amended Complaint nowhere sets forth the rigorous factual prerequisites that are necessary to establish such an extraordinary theory of imputed liability. And, if sustained, the FTC's "common enterprise" theory would potentially subject all manner of modern

---

[1] Even if the Amended Complaint could be construed to allege specific unlawful conduct by WWC, WHG, and WHM, any such claims would fail as a matter of law for the same reasons that the FTC's Section 5 claims against WHR fail as a matter of law: the FTC has no authority to police private-sector data-security standards under the "unfairness" prong of Section 5, and the statements on which the FTC relies for its deception claim simply would not have deceived a consumer acting reasonably. *See* WHR's Mot. to Dismiss at 5-17. Thus, to the extent that the Court reads certain portions of the FTC's Amended Complaint as adequately alleging unlawful conduct by WWC, WHG, or WHM, those defendants join in and incorporate by reference all of the arguments contained in WHR's Motion to Dismiss. Just as those arguments justify dismissal of the Amended Complaint with respect to WHR, they also justify dismissal with respect to WWC, WHG, and WHM.

5

corporations (large and small) to liability for the actions of any of their corporate affiliates.

To begin, it bears emphasis that WWC, WHG, and WHM can be found derivatively liable only if there is some underlying Section 5 violation by WHR. But as explained in WHR's motion to dismiss, none of the conduct alleged in the Amended Complaint violates Section 5 of the FTC Act. There is thus no underlying violation on which derivative liability for WWC, WHG, and WHM could be based, and the claims against those entities could be dismissed on that ground alone.

But even looking past that fatal stumbling block, the FTC's "common enterprise" allegations fail on their own terms. "The general rule is that, absent ***highly unusual circumstances***, the corporate entity will not be disregarded" in Section 5 cases. *P.F. Collier & Son Corp.*, 427 F.2d at 266 (emphasis added). The Amended Complaint falls well short of meeting that demanding standard in this case.

As an initial matter, the general policy reasons that typically compel courts to treat separate corporate entities as a "common enterprise" are entirely absent in this case. Common enterprise liability is generally invoked only when a defendant is trying to use the corporate form as a tool to escape Section 5 liability altogether. *See id*. at 267; *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1216 (D. Nev. 2011) (noting that "courts have been willing to find the existence of a common enterprise" when "a judgment absolving one [defendant] of liability would provide the other defendants with a clear mechanism for avoiding the terms of the order"). That is plainly not true here. The Amended Complaint nowhere alleges that defendants are attempting to use their separate corporate identities as part of some scheme to evade liability. Nor could it: dismissing WWC, WHG, and WHM would have no effect at all on the FTC's ability or inability to hold WHR liable under Section 5.

The FTC also does not allege many of the key facts that courts typically look for in determining whether separate corporate entities are in fact operating as a "common enterprise." Thus, the Amended Complaint does not allege that WWC, WHG, WHR,

6

and WHM "commingl[e] … corporate assets," lack "their own substantive businesses," or fail to adhere to corporate formalities when dealing with third parties. *FTC v. Data Med. Capital, Inc.*, 2010 WL 1049977, at *23 (C.D. Cal. Jan. 15, 2010). The absence of such allegations is telling, and only confirms that WWC, WHG, and WHR should be dismissed from this case.

Being unable to allege any of the facts on which common-enterprise liability under Section 5 is normally predicated, the "common enterprise" allegations the FTC *does* make in this case are remarkably thin. The Amended Complaint devotes only one sentence to explaining why the FTC believes that the corporate separateness of the defendants in this case should be set aside: "Defendants have conducted their business practices described below through an interrelated network of companies that have common ownership, business functions, employees, and office locations." Am. Compl. ¶ 11. That conclusory assertion, however, is legally insufficient to establish common-enterprise liability.

In the usual case, it takes much more than those barebones allegations to set aside corporate formalities. Indeed, courts "routinely refuse" to disregard corporate distinctions "based on allegations limited to the existence of shared office space or overlapping management, allegations that one company is the wholly-owned subsidiary of another, or that companies are to be 'considered as a whole.'" *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 87 (S.D.N.Y. 2010); *see also United States v. Universal Health Servs., Inc.*, 2010 WL 4323082, at *4 (W.D. Va. Oct. 31, 2010). And for good reason. "[T]he type of overlap the [FTC] allege[s] is hardly unusual in corporate structure," *Universal Health Servs.*, 2010 WL 4323082, at *4, and ruling that such facts alone are sufficient to establish a Section 5 "common enterprise" would greatly expand the scope of liability under the Act. Under such a rule, corporations of all kinds could be held liable under Section 5 for deceptive or unfair practices that were undertaken by any member of the corporate family. Disregard of corporate distinctions, in other words,

7

1 would go from being "highly unusual" to routine practice.  *P.F. Collier & Son Corp.*,
2 427 F.2d at 266.

3      In the end, this case is worlds apart from the circumstances in which courts in
4 this Circuit have found "common enterprise" liability.  In *Commodity Futures Trading*
5 *Commission v. Emerald Worldwide Holdings, Inc.*, 2005 WL 1130588, at *9 (C.D. Cal.
6 Apr. 19, 2005), for example, the court found that two companies were engaged in a
7 common enterprise, but only because "[t]he two companies had common control, did
8 not operate separate from each other or at arms length, and they commingled funds in
9 … U.S. bank accounts."  And in *FTC v. Network Services Depot, Inc.*, 617 F.3d 1127,
10 1143 (9th Cir. 2010), the court held that several entities were engaged in a common
11 enterprise where the FTC presented "undisputed" evidence that "Castro's companies
12 pooled resources, staff, and funds; they were all owned and managed by Castro and his
13 wife; and they all participated to some extent in a common venture to sell internet
14 kiosks."  Simply put, those cases are a different species entirely than this one.

## CONCLUSION

16      For these reasons, WWC, WHG, and WHM cannot be held directly or
17 derivatively liable for any violation of Section 5 of the FTC Act.  The Amended
18 Complaint thus should be dismissed with respect to those entities.

19 ///

20 ///
21

22 ///

23
24 ///

8


Case 2:12-cv-01365-PGR   Document 33   Filed 08/27/12   Page 10 of 11


DATED this 27th day of August, 2012.

OSBORN MALEDON, P.A.

By s/David B. Rosenbaum
    David B. Rosenbaum
    Anne M. Chapman
    2929 North Central Avenue, Suite 2100
    Phoenix, Arizona  85012-2794

    Eugene F. Assaf, P.C., 449778, *pro hac vice*
    K. Winn Allen, 1000590, *pro hac vice*
    Kirkland & Ellis LLP
    655 Fifteenth Street, N.W.
    Washington, D.C.  20005

    Douglas H. Meal, 340971, *pro hac vice*
    Ropes & Gray, LLP
    Prudential Tower, 800 Boylston Street
    Boston, MA  02199-3600

    Attorneys for Defendants


9

**CERTIFICATE OF SERVICE**

☒  I hereby certify that on August 27, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- **Kristin Krause Cohen;** kcohen@ftc.gov
- **John Andrew Krebs;** jkrebs@ftc.gov
- **Katherine E McCarron;** kmccarron@ftc.gov
- **Kevin H Moriarty;** kmoriarty@ftc.gov
- **Lisa Naomi Weintraub Schifferle;** lschifferle@ftc.gov
- **Andrea V. Arias**; aarias@ftc.gov

Attorneys for Plaintiff, Federal Trade Commission

s/Kelly Dourlein