Lisa Weintraub Schifferle (DC Bar No. 463928)
Kristin Krause Cohen (DC Bar No. 485946)
Kevin H. Moriarty (DC Bar No. 975904)
Katherine E. McCarron (DC Bar No. 486335)
John A. Krebs (MA Bar No. 633535)
Andrea V. Arias (DC Bar No. 1004270)
Jonathan E. Zimmerman (MA Bar. No. 654255)
Federal Trade Commission
600 Pennsylvania Ave., NW Mail Stop NJ-8100
Washington, D.C. 20580
Telephone: (202) 326-2252
lschifferle@ftc.gov
kcohen@ftc.gov
kmoriarty@ftc.gov
kmccarron@ftc.gov
jkrebs@ftc.gov
aarias@ftc.gov
jzimmerman@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Federal Trade Commission,<br><br>    Plaintiff,<br><br>    v.<br><br>Wyndham Worldwide Corporation, et al.,<br><br>    Defendants. | Case No. 2:12-cv-01365-PHX-PGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS WYNDHAM WORLDWIDE CORP., WYNDHAM HOTEL GROUP, LLC AND WYNDHAM HOTEL MANAGEMENT, INC.'S MOTION TO DISMISS** |

## INTRODUCTION

The Federal Trade Commission ("FTC") opposes the separate motion by Wyndham Worldwide Corporation ("Wyndham Worldwide"), Wyndham Hotel Group, LLC ("Hotel Group"), and Wyndham Hotel Management ("Hotel Management") to dismiss this action as to them pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint does not plausibly allege a common enterprise among the four Wyndham entities. This motion fails because not only does the Complaint allege a common enterprise among the four Wyndham entities, it also alleges direct liability as to each of the Wyndham entities. Each of these grounds is sufficient to deny Wyndham Worldwide's motion to dismiss.

## FACTUAL BACKGROUND

On June 26, 2012, the FTC filed a two-count complaint against Wyndham Worldwide, Hotel Group, Wyndham Hotels and Resorts ("Hotels and Resorts"), and Hotel Management (collectively, "Wyndham" or "Defendants") under Section 13(b) of the Federal Trade Commission Act ("FTC Act"). 15 U.S.C. § 53(b). The FTC subsequently amended its complaint on August 8, 2012. *See* First Amended Complaint for Injunctive and Other Equitable Relief (ECF No. 28) (the "Complaint"). In response to the FTC's Complaint, Wyndham filed two motions to dismiss. This brief addresses the second motion, filed by Wyndham Worldwide, Hotel Group, and Hotel Management ("Wyndham Worldwide Mot."), which argues that those entities have no liability for the allegations in the Complaint. This brief is filed contemporaneously with Plaintiff's response in opposition to Hotels and Resorts' motion to dismiss, and therefore will address only those facts relevant to this motion.

Wyndham Worldwide is in the hospitality business. (Compl. ¶ 7.) Through its subsidiaries, it manages and franchises hotels throughout the United States. (*Id.*) One of its subsidiaries is Hotel Group, which has its offices at the same address as Wyndham Worldwide. (*Id.* at ¶ 8.) Hotel Group, through its subsidiaries, franchises and manages a large number of hotel brands, including Wyndham and Wingate by Wyndham, as well as

1  many non-Wyndham brands, such as Days Inn, Howard Johnson, Ramada, and Super 8.
2  (Wyndham Hotels and Resorts' Motion to Dismiss, Ex. 1 (ECF No. 32-1), Allen Decl.,
3  Ex. A (Wyndham Privacy Policy) at 1.)
4       Hotel Group has two subsidiaries that are relevant here:  Hotels and Resorts, and
5  Hotel Management.  (Compl. ¶¶ 9-10.)  Both of these Wyndham entities have the same
6  offices as Wyndham Worldwide and Hotel Group, and both license the "Wyndham"
7  name to independently-owned hotels ("Wyndham-branded hotels") through either
8  franchise agreements, in the case of Hotels and Resorts, or management agreements, in
9  the case of Hotel Management.  (*Id.*)  In addition to licensing the name, Wyndham Hotel
10 Management "fully operates" the Wyndham-branded hotels to which it licenses the
11 Wyndham name.  (*Id.* at ¶ 10.)
12      The Complaint alleges that Wyndham Worldwide, Hotel Group, Hotels and
13 Resorts, and Hotel Management are directly liable for the unfair and deceptive acts and
14 practices at issue, and also that they are jointly and severally liable because they operate
15 as a common enterprise.  As described below, these allegations satisfy the legal standard,
16 and thus Wyndham Worldwide's motion to dismiss should be denied.

## LEGAL STANDARD

18      Wyndham Worldwide, Hotel Group, and Hotel Management assert that the
19 Complaint does not contain any allegations of liability sufficient to comply with Rule
20 8(a)(2) of the Federal Rules of Civil Procedure.  (Wyndham Worldwide Mot. at 5 (citing
21 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).)  Rule 8(a)(2) requires a complaint to
22 include a "short and plain statement of the claim showing that the pleader is entitled to
23 relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a complaint need only
24 allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*
25 *v. Twombly*, 550 U.S. 544, 570 (2007).  In deciding a motion to dismiss, a court "must
26 take all of the factual allegations in the complaint as true." *Iqbal*,  556 U.S. at 678.

# ARGUMENT

Plaintiff's Complaint meets the requirements of Rule 8(a)(2). The Wyndham Worldwide Motion argues that the Wyndham entities other than Hotels and Resorts should be dismissed because they cannot be held derivatively liable for Hotels and Resorts' unfair and deceptive practices. This argument fails for two reasons: First, the four Wyndham entities are properly found liable for violations of Section 5 of the FTC Act because, as the Complaint sufficiently alleges, they have operated as a common enterprise. Second, the Complaint pleads that all four Wyndham entities are also *directly* liable for violating Section 5 of the FTC Act.

## I.  THE COMPLAINT ALLEGES THAT THE WYNDHAM ENTITIES ACTED AS A COMMON ENTERPRISE.

Plaintiff's Complaint pleads sufficient facts to claim that the four Wyndham entities—Wyndham Worldwide, Hotel Group, Hotels and Resorts, and Hotel Management—acted as a common enterprise. "Factors in determining common enterprise include: (1) common control; (2) sharing office space and offices; (3) whether business is transacted through a 'maze of interrelated companies'; and (4) commingling of funds." *FTC v. John Beck Amazing Profits, LLC*, No. 2:09-CV-04719-JHN, 2012 WL 2044791, at *20 (C.D. Cal. Apr. 20, 2012) (citation omitted). *See also FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1116 (S.D. Cal. 2008). The Ninth Circuit has recognized other factors in determining common enterprise, including "pooled resources [and] staff." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010). No one factor is controlling, as "the pattern and frame-work of the whole enterprise must be taken into consideration." *Del. Watch Co. v. FTC*, 332 F.2d 745, 746-47 (2d Cir. 1964) (internal quotations and citation omitted); *see also FTC v. Grant Connect, LLC,* 827 F. Supp. 2d 1199, 1213 (D. Nev. 2011) ("Even if Defendants had their own phone numbers, bank accounts, and paid their own bills, that would not preclude a common enterprise finding.").

The Complaint alleges sufficient facts that, taken as true, plead a claim that the Wyndham entities operate as a common enterprise. As part of their common enterprise, each Wyndham entity played a role in the unreasonable data security practices at issue in the Complaint—from controlling the corporate computer network, to managing the property management systems at the hotels, to the operation of the hotels themselves. The Complaint specifically pleads (1) common control, (2) shared office space and offices, (3) that business is transacted through a maze of interrelated companies, and (4) pooled resources and staff, each of which is addressed more fully below.

**Common Control.** The common control prong is particularly salient to the Wyndham entities' management of their information security practices. The Complaint alleges that both Hotel Group and Wyndham Worldwide controlled the information security of the Hotels and Resorts network during relevant time periods:

> From at least 2008 until approximately June 2009, Hotel Group had responsibility for managing Hotels and Resorts' information security program. In June 2009, Wyndham Worldwide took over management and responsibility for Hotels and Resorts' information security program.

(Compl. ¶ 14.) The Complaint also alleges that there was common control and ownership of the Wyndham entities by Wyndham Worldwide and Hotel Group. (*Id.* at ¶¶ 7-8 (stating that parent Wyndham entities "controlled the acts and practices of [their] subsidiaries").)

**Shared Office Space and Offices**. The Complaint alleges that each of the four Wyndham entities share office space and offices. (*Id.* at ¶¶ 7-10 (identifying the place of business of each Wyndham entity as 22 Sylvan Way, Parsippany, New Jersey 07054).)

**Maze of Interrelated Companies**. The Complaint pleads that both Hotels and Resorts and Hotel Management license the "Wyndham" name to Wyndham-branded hotels. (*Id.* at ¶¶ 9-10.) The Complaint further alleges that both of these entities require the "Wyndham-branded hotel to purchase, and configure to their specifications, a . . . property management system [which is] part of Hotels and Resorts' computer network . . . ." (*Id.* at ¶¶ 15-16.) Wyndham's privacy policy similarly invokes several

- 4 -

different Wyndham entities: It is hosted on a website called "Wyndham"; it is the privacy policy of Hotels and Resorts (*id.* at ¶ 21); it expressly states that it is the privacy policy of Hotel Group (*id.* at ¶ 23); and it refers readers to the Wyndham Worldwide website "[f]or more information on *our* affiliates" (Wyndham Privacy Policy at 1 (emphasis added)). These allegations, in conjunction with the allegation that Hotels and Resorts, Wyndham Worldwide, and Hotel Group were responsible at various times for the information security of the Hotels and Resorts computer network (Compl. ¶ 14), establish that Defendants' business operations, and in particular their data security practices, are managed by a maze of interrelated companies.

**Pooled Resources and Staff**. The FTC further alleges that various business functions and employees were shared among the Wyndham entities. (*See, e.g.*, *id.* at ¶ 9 ("Hotel Group and Wyndham Worldwide have performed various business functions on behalf of Hotels and Resorts, or overseen such business functions, including legal assistance, human resources, finance, and information technology and security."); *id.* at ¶ 10 ("Hotel Group and Wyndham Worldwide have performed various business functions on Hotel Management's behalf, or overseen such business functions, including legal assistance and information technology and security."); *id.* at ¶ 11 ("Defendants have conducted their business practices described below through an interrelated network of companies that have common ownership, business functions, employees, and office locations."))

Wyndham's representations in this litigation confirm this allegation. For example, Wyndham represents that a single individual, Tim Voss, "has overall responsibility for data-security efforts at WWC and *all of its subsidiaries*." (Def.'s Mot. to Transfer Venue at 8 (ECF No. 23) (emphasis added).) Another individual, Bob Loewen, is the "Chief Financial Officer at *WHG*," but Wyndham states that he has "knowledge of the expenditures made to respond to the intrusions" of *WHR's* network. (*Id.* (emphasis added).) Kirsten Hotchkiss is the "Senior Vice President, Employment Counsel at *WWC*" and "was involved in coordinating the response to all three intrusions," which Wyndham

claims happened at *WHR*. (*Id.* at 8-9 (emphasis added).)  A former employee, Jim Copenheaver, was the "Vice President of Security & Compliance at *WHG*," but is said to have worked at "*WWC's* New Jersey headquarters," and "had general responsibility for the response to the first criminal data intrusion" of *WHR's* network." (*Id.* at 9 (emphasis added).)

Wyndham relies heavily on *P.F. Collier & Son Corp. v. FTC*, which, although it acknowledges the importance of corporate formalities, states that "where the public interest is involved, as it is in the enforcement of Section 5 of the Federal Trade Commission Act, a strict adherence to common law principles is not required in the determination of whether a parent should be held for the acts of its subsidiary, where strict adherence would enable the corporate device to be used to circumvent the policy of the statute." 427 F.2d 261, 267 (6th Cir. 1970).  This concern is implicated in this matter: for example, if the Court were to enter an order against only Hotels and Resorts, Wyndham would be able to transfer responsibility for information security to another Wyndham entity—as it has done in the past (Compl. ¶ 14)—and, as a result, avoid prospective enforcement actions regarding deceptive or unfair acts or practices related to data security. *See Grant Connect,* 827 F. Supp. 2d at 1216 (observing the importance of common enterprise in circumstances when "a judgment absolving one [defendant] of liability would provide the other defendants with a clear mechanism for avoiding the terms of the order"). Indeed, *P.F. Collier* is often cited in support of *disregarding* the corporate form. *See, e.g.*, *United States v. ACB Sales & Serv., Inc.,* 590 F. Supp. 561, 573 (D. Ariz. 1984) ("Liability for violation of an FTC order under section 5(*l* ), however, may extend further than the basic principles of tort and agency law would otherwise permit." (citing *P.F. Collier*, 427 F.2d at 271)).

Regardless, as the *P.F. Collier* opinion exemplifies, the common enterprise analysis is a fact-specific inquiry and, as such, inappropriate for a motion to dismiss. *See, e.g.*, *Mastro's Restaurants v. Dominick Group*, 11-CV-1996-PHX-PGR, 2012 WL 2091535, at *5 (D. Ariz. June 11, 2012). The *P.F. Collier* court engaged in an extensive

- 6 -

review of an administrative proceeding before the FTC, considering factors such as overlapping officers and directors, organizational manipulations, subsidiaries' use of the name of the parent, and actual control over the subsidiary by the parent.  *See P.F. Collier*, 427 F.2d at 266-70.  At this stage, it is sufficient that the Complaint pleads facts to establish a plausible claim of common enterprise.

**II.   THE COMPLAINT INCLUDES ALLEGATIONS OF DIRECT LIABILITY AGAINST ALL OF THE WYNDHAM ENTITIES.**

Wyndham alleges that the Complaint lacks allegations "showing how [Wyndham Worldwide], [Hotel Group], or [Hotel Management] made any deceptive representations or engaged in any unfair conduct." (Wyndham Worldwide Mot. at 5.)  This is based on a highly selected reading of the Complaint and, in fact, is plainly wrong.  The Complaint alleges that each of the Wyndham entities is liable for Section 5 violations.

**A.   Deception**

The Complaint pleads that all four Wyndham entities have made deceptive representations, and these allegations are supported by the language of Wyndham's privacy policy.  First, as Wyndham concedes, the Wyndham privacy policy makes representations on behalf of Hotels and Resorts.  (Compl. at ¶ 21; s*ee also* Wyndham Worldwide Mot. at 4.)  Second, the Complaint alleges−and it is clear from the face of the privacy policy−that the privacy policy is identified as being the privacy policy of Hotel Group.  (Compl. ¶ 23; s*ee also* Wyndham Privacy Policy at 1 ("Wyndham Hotel Group, LLC Customer Privacy Policy and Information Practices Statement" ).)  Thus, the representations made in the privacy policy were made on behalf of the Hotel Group.  Third, the Complaint pleads that Wyndham Worldwide "controlled the acts and practices of its subsidiaries," including Hotels and Resorts (Compl. ¶¶ 7, 9), and, moreover, was responsible for the data security of the Hotels and Resorts network during the third breach (*id.* at ¶ 14).  Finally, the Complaint alleges that Hotel Management makes the same representations because it "fully operate[s]" (*id.* at ¶ 10) Wyndham-branded hotels, some of which have websites that direct consumers interested in reservations to Hotels

and Resorts' website, where the Wyndham privacy policy is hosted (*id.* at ¶ 20).  Thus, the Complaint specifically pleads deceptive practices related to data security as to all four Wyndham entities.

   **B.**  **Unfairness**

  The Complaint similarly sets forth claims that all four Wyndham entities engaged in unfair acts or practices related to the data security of the Hotels and Resorts network. First, as Wyndham concedes, the Complaint alleges unfair "practices related to [Hotels and Resorts'] corporate network or to the separate networks maintained by the Wyndham-branded hotels." (Wyndham Worldwide Mot. at 4; *see also* Compl. ¶ 24.) Second, the Complaint also alleges that Hotel Group *managed* the information security program for Hotels and Resorts' network, which lacked reasonable data security. (Compl. ¶ 14 ("From at least 2008 until approximately June 2009, Hotel Group had responsibility for managing Hotels and Resorts' information security program.").)  Third, the Complaint further alleges that in June 2009, following the second breach, but prior to the third, Wyndham Worldwide assumed responsibility for the information security program for the same network.  (*Id.* ("In June 2009, Wyndham Worldwide took over management and responsibility for Hotels and Resorts' information security program.").) Fourth, the Complaint alleges that Hotel Management entered management agreements with Wyndham-branded hotels (including some of those that were breached) that permitted Hotel Management to "fully operate the hotel" (*id.* at ¶ 10) and required the hotels to "configure [a designated computer system] to their specifications" (*id.* at ¶ 15). Finally, the Complaint specifically alleges unfair practices engaged in by Defendants collectively.  (*See, e.g., id.* at ¶ 31 ("These files were created and stored in clear text because *Defendants* had allowed the property management systems to be configured inappropriately to create these files and store the payment card information that way." (emphasis added)).)  Thus, the Complaint specifically pleads that each Wyndham entity individually, as well Defendants collectively, engaged in unfair practices related to data

- 8 -

security that resulted in the known theft of hundreds of thousands of consumers' payment card account numbers and millions of dollars in fraud loss.  (*See id.* at ¶ 40.)

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court deny Wyndham Worldwide's motions to dismiss.

1 | Dated this __ day of _____, 2012.

                                              s/ Kevin Moriarty

                                  Lisa Weintraub Schifferle
Kristin Krause Cohen
Kevin H. Moriarty
Katherine E. McCarron
John A. Krebs
Andrea V. Arias
Jonathan E. Zimmerman
Federal Trade Commission
600 Pennsylvania Ave., NW Mail Stop NJ-8100
Washington, D.C. 20580

Attorneys for Plaintiff Federal Trade Commission

# CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

David B. Rosenbaum, 009819
Anne M. Chapman, 025965
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2794

Eugene F. Assaf, P.C., 449778, (Pro Hac Vice)
K. Winn Allen, 1000590, (Pro Hac Vice)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Douglas H. Meal, 340971, (Pro Hac Vice)
Ropes & Gray, LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600

                                     s/ Kevin Moriarty
                                     Kevin H. Moriarty